IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-CV-391-MOC-DCK

| | |
|---|---|
| RAYMOND A. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| OGLETREE, DEAKINS, NASH, ) | |
| SMOAK & STEWART, P.C., ) | |
| C. MATTHEW KEEN, SHERA K. ) | |
| STEWART and BRIAN M. ) | |
| FREEDMAN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss" (Document No. 6). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u>.

### I. BACKGROUND

This motion requires the Court to first take note of recently resolved litigation involving Raymond Johnson ("Plaintiff") and his former employer, Hendrick Automotive Group ("Hendrick"). <u>See</u> <u>Johnson v. Hendrick Auto. Grp.</u>, 3:10-CV-109-FDW (W.D.N.C. 2010). The law firm Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), including C. Matthew Keen ("Keen"), Shera K. Stewart ("Stewart"), and Brian M. Freedman ("Freedman") (collectively "Defendants"), represented Hendrick throughout its recent litigation with Plaintiff. <u>Id.</u>

Plaintiff filed EEOC charges against Hendrick on January 8, 2008, alleging race and sex

discrimination. (Document No. 1-1, p.31). Plaintiff also filed a Workers' Compensation claim against Hendrick with the North Carolina Industrial Commission, and an administrative complaint against Hendrick under the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, with the North Carolina Department of Labor. (Document No. 1-1, p.31). The parties conducted a mediation and reached an agreement to settle Plaintiff's EEOC charge and related claims. Pursuant to that agreement, Plaintiff executed a "General Release of All Claims" ("General Release I") on February 15, 2008. (Document No. 1-1, p.30). General Release I included Johnson's pending EEOC and REDA charges and all other claims, but excluded his Workers' Compensation claim pending before the Industrial Commission. (Document No. 1-1, pp.23-30).

On June 11, 2008, Plaintiff filed a second EEOC charge against Hendrick, again alleging race discrimination. (Document No. 6-3, p.2). The EEOC notified Plaintiff on September 18, 2008 that it would take no further action on this second charge. (Document No. 7, p.4-5). On September 12, 2008, Plaintiff resolved his Workers' Compensation claim against Hendrick, signing a second release of all claims ("General Release II"). (Document No. 6-4, pp.2-9). The parties also entered into an "Agreement for Final Settlement and Release" (Document No. 6-5), which was approved by the North Carolina Industrial Commission. (Document No. 1-1, pp.16-17). Plaintiff filed a third EEOC charge naming Hendrick as respondent on June 10, 2009, alleging race, sex, and age discrimination. (Document No. 6-6, p.2). The EEOC issued a no cause finding and a right-to-sue letter on December 9, 2009. (Document No. 6-7, p.2).

Plaintiff filed suit against Hendrick on March 10, 2010, alleging, *inter alia*: race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); retaliation in violation of REDA; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; unfair and deceptive trade practices in violation of N.C. Gen.

State § 75-1.1; a violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*; and a breach of settlement agreement and release. Johnson, 3:10-CV-109-FDW, Document No. 1. Hendrick counterclaimed for breach of contract and unjust enrichment based on consideration given for the release agreements. Id., Document No. 34.

Ultimately, on April 14, 2011, Judge Frank D. Whitney granted Hendrick's motion for summary judgment as to all claims asserted by Plaintiff and granted Hendrick's motion for summary judgment on its counterclaims. Johnson v. Hendrick Auto. Grp., 2011 WL 1696987 (W.D.N.C. May 3, 2011). Plaintiff filed a motion and an amended motion for reconsideration, on May 17 and 18, 2011 (Document Nos. 104, 106), which were both denied by Senior Judge Graham C. Mullen on September 13, 2011. Johnson, 3:10-CV-109-FDW, Document No. 119.

On May 10, 2011, Plaintiff filed a fourth EEOC charge against Hendrick, alleging race and age discrimination and that Hendrick breached the confidentiality provisions of General Release I. This charge was dismissed two days later on May 12, 2011, and the EEOC issued a notice of right to sue. (Document No. 6-9, p.2).

## II. PROCEDURAL BACKGROUND

The instant litigation involves Defendants in their capacity as attorneys for Hendrick during its previous litigation with Plaintiff. Plaintiff filed his "Complaint," *pro se*, on August 11, 2011. (Document No. 1). The Complaint alleges a number of claims against Defendants that largely mirror those brought against Hendrick: deprivation of rights under the Title VII; age discrimination under the ADEA; malpractice; retaliatory termination in violation of REDA; violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6; unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1; and fraud under North Carolina law. (Id. at pp.2-3).

On September 8, 2011, Defendants filed their "Motion to Dismiss Plaintiff's Complaint"

3

(Document No. 6), accompanied by a "Memorandum in Support . . ." (Document No. 7). Plaintiff filed a "Response in Opposition . . ." (Document No. 9) on September 26, 2011, followed by "Supplemental Documents in Opposition" (Document No. 10) on September 28, 2011. Defendants' "Reply" (Document No. 14) was filed on October 12, 2011. Having been fully briefed, immediate review of the pending motion and recommendation for disposition to the Honorable Max O. Cogburn, Jr. is now appropriate.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570; see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

4

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## IV. DISCUSSION

### A. Employment-Related Claims

Plaintiff asserts a number of employment-related claims against Defendants. However, relief under each of these statutes requires an employment relationship between Plaintiff and the current Defendants, which Plaintiff fails to allege. Title VII of the Civil Rights Act of 1964 prohibits discrimination by covered employers on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. The Act does not apply where no employment relationship exists. Id. See also Hayes v. Wooten, 2010 WL 5352328, at *3 (E.D.N.C. Dec. 14, 2010). The ADEA contains similar prohibitions for employers for race discrimination against an applicant or their employees. 29 U.S.C. § 623. In North Carolina, REDA prohibits employers from discriminating or taking retaliatory action against an employee who in good faith files a claim against his employer or engages in other protected activities under the statute. N.C. Gen. Stat. § 95-241(a). The North Carolina Wage and Hour Act provides employers with standards for the payment of wages, minimum wage, overtime and child labor. N.C. Gen. Stat. §§ 95-25.1, *et seq*.

Neither Plaintiff's "Complaint" nor his supporting memoranda provide the Court with any

5

suggestion of an employment relationship with Defendants.[1]  Indeed, Plaintiff's only allegation related to Defendants in their employment capacity is that Defendants are generally "an employer in an industry affecting commerce within the meaning of Section 701(b) (g) and (h) of Title VII . . . ." (Document No. 1, p.4).  Presumably, this speaks only to Ogletree and not to the other Defendants, who are individual attorneys, because Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42. U.S.C. § 2000e(b).  However, it is not enough that Ogletree is simply an employer within the meaning of Title VII.  The statute only provides protection to an employer's *actual* employees or applicants. See 42 U.S.C. § 2000e-2(a).  Here, Plaintiff must allege that Ogletree was *his* employer, not just an employer generally within the meaning of the statute.  Plaintiff does not offer any evidence to establish that Ogletree ever employed Plaintiff.

Furthermore, Plaintiff does not state any facts to suggest that the other Defendants ever employed him. Defendants, for their part, aver that there has never been an employment relationship between Plaintiff and any of the Defendants.  (Document No. 7, p.10).  Without any showing that such a relationship existed at the time of the alleged misconduct, the Court is compelled to dismiss Plaintiff's employment-related claims.  Finally, notwithstanding the lack of any employment relationship, the present claims seem to be an attempt to rehash the factual basis for Plaintiff's prior

---

[1]As stated, the factual allegations of a claim generally must be adequately pled in the *complaint*. However, the Fourth Circuit has made clear that courts should allow a *pro se* plaintiff reasonable opportunity to develop pleadings, looking beyond the face of the complaint if necessary. Ferebee v. Cejas, 1998 WL 647000, at *2 (4th Cir. 1998) (unpublished opinion).  See also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) (noting that a district court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings); Coleman v. Peyton, 340 F.2d 603, 603 (4th Cir. 1965) (deciding that a *pro se* plaintiff should be given an opportunity to particularize a potentially viable claim).  Thus, out of an abundance of caution, the Court also looks to Plaintiff's responses in opposition to Defendants' motion to dismiss.

litigation against Hendrick.  Plaintiff has failed to make a single plausible argument related to the employment claims against the Defendants in this case and has given the Court no basis to draw any inference that Defendants violated Title VII, the ADEA, REDA, or the North Carolina Wage and Hour Act.

**B.  Malpractice**

Throughout his complaint and responses, Plaintiff alleges that Defendants engaged in "professional malpractice unethical misconduct."  See, e.g., (Document No. 1, p.6).  To show negligence in a legal malpractice claim, a plaintiff must prove that the attorney breached a duty owed to his client and then show that this negligence proximately caused the plaintiff's harm. Cornelius v. Helms, 120 N.C. App. 172, 175-76, 461 S.E.2d 338, 340 (1995).  However, an essential element of any malpractice claim is an attorney-client relationship or other fiduciary duty owed to the plaintiff.  Id. at 175, 461 S.E.2d at 340.

Here, Plaintiff has not stated any facts to suggest that such a relationship with Defendants ever existed or that one could be inferred based on his interaction with Defendants.  In fact, Plaintiff admits that Defendants' role in the prior litigation with Hendrick was representing *Hendrick*, not Plaintiff.  (Document No. 1, p.4; Document No. 9, p.2).  Plaintiff attempts to overcome this by arguing that Defendants had "no rights to lie" to Plaintiff, the courts, and various other governmental agencies without being "held accountable for their unethical misconduct professional action." (Document No. 9, p.15).  However, the law is clear that a legal malpractice claim cannot be sustained absent a fiduciary duty;  therefore, this claim must be dismissed.  Cornelius, 120 N.C. App. at 175, 461 S.E.2d at 340.

**C.  Unfair and Deceptive Trade Practices**

To state a claim for unfair and deceptive trade practice ("UDTP") under N.C. Gen. Stat. §

75-1.1, a plaintiff must allege three elements: "(1) an unfair or deceptive trade practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant." Carter v. Ozoeneh, 2010 WL 890260, at *6 (W.D.N.C. Mar. 8, 2010). The statute applies to all business activities, but contains an exception for "professional services rendered by a member of the learned profession." N.C. Gen. Stat. § 75-1.1(b). The "learned profession" exception applies to attorneys' professional services. Laws v. Priority Trustee Servs. of N.C., LLC v. Morris, Schneider & Prior, LLC, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009).

In Plaintiff's complaint and subsequent responses, he alludes to Ogletree's actions in "misrepresenting the law" as being unfair and deceptive and states that he relied on the attorneys "knowing the law [and] being ethically bound not to give false legal misrepresentation of the law." (Document No. 1; Document No. 10, p.4). On top of the fact that there was never an attorney-client relationship between Plaintiff and Defendants, any legal advice given would constitute "professional services" rendered by the Defendants as attorneys. These are the very services contemplated by the exception to the UDTPA. Thus, Plaintiff fails to state a claim pursuant to N.C. Gen. Stat. § 75-1.1.

**D. Fraud and Misrepresentation**

As to Plaintiff's fraud claim, the elements of fraud are well-established: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Metro. Grp., Inc. v. Meridian Indus., Inc., 2010 WL 5056771, at *2 (W.D.N.C. Dec. 6, 2010) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

For most causes of action, a complaint must only set out a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). However, both the Federal Rules of Civil Procedure and the North Carolina Rules of Civil Procedure require that fraud claims

be pled with additional particularity. Id., at *3 (citing Fed.R.Civ.P. 9(b); N.C. Gen. Stat. § 1A-1, Rule 9(b)). Thus, the complaint must allege "the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby." Id. (citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)).

Plaintiff's initial complaint is vague as to his fraud claim. Plaintiff states that Defendants are liable for fraud "in connection with Plaintiff sale commission and related incentives and public policy claim." (Document No. 1, p.3). To support this allegation, Plaintiff lists a number of instances where Defendants allegedly lied to Plaintiff, the district court, and the EEOC, constituting fraud and misrepresentation. (Id., p.3, 5-14). However, none of these assertions adequately state with particularity the elements of fraud. Plaintiff fails to indicate whether Defendants made the statements with the intent to deceive, whether the statements were reasonably calculated to deceive, whether he actually was deceived, and what injury he suffered as a result of these statements.

Even looking to Plaintiff's additional submissions to the Court, Plaintiff's fraud claim does not fare any better. In Plaintiff's response, he attempts to cure the lack of specificity in his "Complaint" by reciting nearly verbatim the elements of fraud and by listing his alleged damages: "body harm lost wages pain mental anguish, lost [sic] of enjoyment of life punitive damages enmotion [sic] stress" and "loss of income." (Document No. 9, p.16-17; Document No. 10, p.3). Plaintiff also lists new factual allegations of fraudulent and false statements that Defendants allegedly made in the course of Plaintiff's litigation with Hendrick. (Document No. 9).

However, to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Even with the additional allegations in Plaintiff's "Response,"

9

Plaintiff has not provided any "factual content that allows the [C]ourt to draw a reasonable inference that" Defendants intended to deceive Plaintiff, that he was deceived, and how his harm resulted from Defendants' allegedly false and misleading statements. Iqbal, 129 S.Ct. at 1949. Thus, Plaintiff's fraud claim must also be dismissed.

## V. CONCLUSION

In short, the undersigned finds that Plaintiff has failed to state any plausible claims for relief. Even viewing the "Complaint" in the most favorable light, it appears to be a vehicle by which Plaintiff is venting his frustration with previous litigation and/or seeking to appeal certain aspects of that case. For the reasons stated herein, Plaintiff's allegations simply do not support a federal lawsuit against these Defendants.

## VI. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion To Dismiss" (Document No. 6) be **GRANTED**.

## VII. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir.

1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* plaintiff and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

Signed: October 19, 2011

David C. Keesler
United States Magistrate Judge